Good morning, your honors. Ken Owen, Fernander Singh, his wife and two sons. We were here two and a half years ago. This court remanded back to the BIA to give us an opportunity to give the BIA an opportunity to look at to see if Mr. Singh was eligible for asylum based on political opinion because of the relationship that he had with his brother. The BIA decision did not address the circumstances of the brother who we had briefed saying that he had been tortured and killed by the Punjab police. And anyway, substantial evidence supports, compels the finding that Mr. Singh's brother had been tortured and killed based on an imputed political opinion under the case that I've cited, the Singh v. Ilchert and Ratnam and cases like that. I don't have any trouble with your argument that the evidence supports an inference that Narinder Singh has a well-founded fear that he'll be persecuted on account of his political opinion. My problem is with whether the record compels that. Yes. What the BIA says is, well, they're not bothering the rest of the family on account of the brother. So regardless of whether subjectively Narinder Singh thinks they'll persecute him on account of his brother, objectively, that's not well-founded in view of the rest of his family not being bothered. Absolutely, Your Honor. There was another reason that made me think it might be some evidence in the record for that, and that is Narinder himself says the reason they went after his brother is he was a college kid. And apparently a lot of the militancy is among the college kids there. And Narinder was a farm kid. He didn't go to college. Right. And why isn't that enough so that even though the record allows for an inference that Narinder Singh's fear is well-founded, nevertheless, it doesn't compel. OK. Well, this was Narinder's opinion that. Well, gee, being asked by the immigration judge. Well, this was his opinion. Well, that's why they didn't come after me. I mean, the fact is, is the reason they didn't. The fact is, they did come after Narinder Singh on two or three occasions right during the December 1989 events of where they arrested his brother, where they arrested his brother a second time. So. So this was just Narinder's opinion of. Well, gee, this is why they didn't come after me. And the cases that I cited, the single children, Ratnam and the other several cases I cited, I mean, I read those the other day again. And none of those petitioners are students. So it's just a petitioner's opinion of why they didn't come after him. So what's critical is that the police did come after him. Although they didn't hand him a note saying, hey, we would like to interrogate you and torture you so that we can find out about the militants. They didn't do that. But the threat was there because they did come looking for him two or three times in December of 89. What's more significant here is that after he came here in June of 1992, the mother informed him that the police were still looking for him. And this was based on that while he was in New Delhi in 19 in 1992, before he left, the militants again came after him, kidnapped his son, got a ransom, a partial ransom from him. And what happened was the the police arrested this militant. And right after that, right after that, then the police wanted to find Mr. Singh again. And this is when he's not even in the country. So, I mean, his threat is very it's very real for Mr. Singh. All we have to demonstrate to the court, I believe, is a 10 percent chance of him being persecuted if we send him back. And I think that is compelled. I mean, what other reason would the police be looking for Mr. Singh? They could be saying, well, gee, we want to see Mr. Singh. I think of other other reasons. Mr. Singh, we know we have we're not suspecting you of anything, but you know where your brother is. Mr. Singh, we don't suspect you of anything, but you know where these people are, people around your age that we're looking for. OK, I agree. I mean, I can't prove that he won't be persecuted if we send him back. But that's just one or two or three or four reasons. That makes it maybe. Well, maybe there's a 40 percent chance that he'll be persecuted if we send him back. You know, I mean, I understand there can be other reasons. We can't prove what will happen. But we're saying that, boy, there sure is at least a 10 percent chance that maybe really they want to interrogate him just like they did his brother. I think the case that is really on point is novice the INS, which says that if the police have persecuted one member of a family, if the government has persecuted one member of a family, the reasonable inference is that, well, they're motivated politically toward the other family member. So, I mean, it's it's it's a reasonable inference to say, boy, I think they really want, you know, why else would they go after? Well, you've answered that. But I mean, I agree there are other possibilities, but certainly not to the degree that would not allow him to be eligible for asylum. There is at least a 10 percent chance that they would certainly persecute him just like they did his brother. And even it doesn't even have to go up to 10 percent because of the general conditions that occurred at that time, that the police are persecuting Sikh militants and they believe that he's a Sikh militant. He testified that they believe he's a Sikh militant. So I have this time. And unless the Court has other questions. Thank you very much. Morning, Your Honor. May it please the Court. My name is Andrew McLaughlin. I represent the Respondent Attorney General of the United States in this case. As the Court has already observed, this is a this is a true substantial evidence case. This is a burden of proof case as the Board viewed it. And that's the reason that they reached the result that they did. There's no question here that the petitioner is credible and that he has a subjective fear of future persecution. So the immigration judge did not question that at all. So the real issue here is whether the record compels a finding that his subjective fear is objectively reasonable. I don't think you really even need to get that far, Your Honor. The internal relocation evidence is overwhelming. He successfully internally relocated with no problems from the police. Whether he had a subjective fear of the police in New Delhi or not, it clearly was not objectively reasonable. And that absolutely disposes of the case. And then the second point gets back to where Judge Kleinfeld was. But I would start with the internal relocation issue, which the Board specifically pointed to, and specifically even pointed to the pages in the record that supported that. Even though there's testimony that the police were still looking for him when he moved? The police in Punjab were looking for him. Punjab is a single state in a very large and populous country. There is no evidence whatsoever that any police in New Delhi were looking for him or that the police had in Punjab contacted the police in New Delhi or that there was any kind of conversation whatsoever between them. That's another point that even if there had been some sort of evidence of contact between the two police forces or an inference of contact, there simply isn't evidence that compels a conclusion opposing the one of the Board that he failed to prove his case that internal relocation wasn't possible. I would like to... So relocation, usually what we do is we remand so that the Board can decide that if we say there wasn't a substantial basis for the Board's decision on whether there was a well-founded fear. You're saying in this case we don't have to do that. The Board's decision specifically says he was able to relocate to New Delhi for one year with no problem from the police. It specifically says that. It does, but isn't that in the context of deciding whether his subject of fear was objectively reasonable rather than at the next step of the analysis? I'm not sure if that was Judge Kleinfeld's question, but that's my question. The two are the same question. They've answered the same question in that answer. Internal relocation was clearly possible. The Board held that it didn't need to get there, and that's where you get to the substantial evidence question. Does the evidence in the record compel the conclusion otherwise? And the argument on our brief, I would note for Judge Kleinfeld, you were discussing that his brother was of similar age. It does not appear that to be the case. We don't know the age of the brother. We do know that he was a college student, and we know that Mr. Singh, Narendra Singh, was 35 years old in 1989. It appears that he was a substantially older brother. We don't know. I can't tell from the record how much older. So in addition to college and other factors, the occupation and so on, you also have an age distinction. You also have the fact that he had a family. The distinctions between the two of them appear to be dramatic. The one that strikes me the most is that the brother was actually held somewhere by bad guys that the police were looking for. So when the police grabbed the brother, they may or may not have been thinking that the brother's a bad guy, but they were clearly looking for the rest of the bad guys. There is no indication whatsoever from the record that Mr. Narendra Singh knows where the bad guys are or the police think that he knows where the bad guys are. The fact is they asked about him, and that's just not enough to amount to an objective for your persecution. If there are no further questions, I have nothing more to offer. Thank you. Just briefly, Your Honors, the record does reflect that at Exeter Record or Administrative Record 373 that the brother was 32 years old. Mr. Singh would have been 35 according to the asylum application that he filed. So there really was just a three-year difference, 35, 32. Granted, the brother was going to college. And again, they weren't exactly the same. Internal relocation on remand. I've been assuming that we can establish our eligibility for Mr. Singh's asylum. I've been certainly trying to avoid getting this case remanded again so that the BIA can have another shot at this. Some of the cases I cited, I submitted some recent cases to the board today, and the cases that I submitted to the court deal with remands and opportunities for the government to argue. If the government hasn't argued the issue, then they did argue it here. They talked about internal relocation here, albeit in a different context, but wasn't there evidence presented in this case that he had relocated to Delhi? Oh, of course. So the issue of relocation was at least factually made before the BIA here, which it was not, I believe, in the cases that you cite in your materials. Absolutely, Your Honor. Well, the point about the relocation, well, to address what you just brought up, is that, yeah, he relocated to New Delhi and the New Delhi police were looking for him because of the incident, because of the kidnap that occurred there. Does the record show which police were looking? Opposing counsel said the Punjabi police were still looking, and you just said that the New Delhi police were looking. Does the record specify? The record does get correct. The record specifies that the Punjab police were after him because of the incident that happened, because of the arrest of the militant in New Delhi. Mr. Singh did testify that whoever goes to the New Delhi police, they send them back to Punjab. So New Delhi is not a good place to be. And the government has to make this argument. I don't get it. I didn't follow that. Okay. Are the New Delhi police looking for him in order to persecute him for his political opinion or not? Mr. Singh testified that if you go to the New Delhi police, they will send you back to Punjab. So he doesn't say they're looking for him. He didn't say that the New Delhi police. I don't think he said that the New Delhi police was looking for him. But there was a kidnap incident in New Delhi, and somehow, and I'm not sure if it was the New Delhi police who arrested the militant and then would send him back to Punjab. So I'm out of time. Thank you very much. Thank you. And Narendra Singh versus Gonzales is submitted. We'll take a 10-minute recess. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Kleinfeld, Hawkins, Graber